J., M., P. Ry. & N. Co. v. Warriner, etc.—Syllabus.

THE JACKSONVILLE, MAYPORT, PABLO RAILWAY & NAVIGATION COMPANY, A CORPORATION, APPELLANT, VS. CHARLES F. WARRINER, SURVIVING PARTNER, ETC., APPELLEE.

| | |
|---|---|
| 35 | 197 |
| 35 | 286 |
| 35 | 581 |
| 35 | 197 |
| 36 | 342 |
| 44 | 257 |
| 47 | 143 |
| 35 | 197 |
| 50 | 459 |
| 35 | 197 |
| 54 | 104 |
| 54 | 105 |
| 35 | 197 |
| 57 | 219 |
| 35 | 197 |
| 58 | 156 |

1. Original accounts rendered by plaintiff to the board of directors of the defendant corporation at a regular meeting, and of which a copy was given to each director, and which were carefully examined by the directors and no objection made, and which accounts were accepted and approved by the board of directors, are relevant and proper evidence in a declaration containing a count upon an account stated. An objection that such evidence was "improper in that the minutes of the company is the best evidence, and that it is not shown that the plaintiff performed any service for the company," was not well taken, and was properly overruled.

2. It is not necessary, in proving an account stated, the gist of which consists in the agreement to or acquiescence in the correctness of the account by the other party to first show the books of original entry from which the account agreed upon by the parties was made up.

3. The agreement upon which suit was brought, as appears upon the minute books of the defendant corporation, was as follows: "Be and it is hereby resolved that Charles F. Warriner and A. L. Hungerford, partners doing business as aforesaid, shall be paid the sum of one thousand dollars annually for the term of three years from this date for such services as shall be rendered by them severally as secretary and treasurer of said company, and jointly in keeping the books, and accounts thereof, said salary to be paid monthly." *Held*, That this contract is one which a partnership might lawfully enter into, and which, being partially completed upon the death of one partner, might be lawfully performed by the other as surviving partner.

4. As a general rule, where a partnership has entered into an executory contract, and one of the partners dies after it has been partially performed, his death does not absolve either party from performance, in the absence of an express stipulation to that effect; and the existence of the partnership with its active functions to be exercised by the surviving partner is continued until the contract has been fully performed.

5  After making the contract set out in the third head-note above, one of the partners died, and after his death the directors of the defendant corporation agreed to pay the other partner the salary in question for a continuance of the services for which the firm had been employed: *Held*, That this agreement is referable to the original contract, [and, in the absence of any proof to the contrary, must be presumed to have been made with the plaintiff as surviving partner.

6. Where the court refuses upon request to give the jury an instruction which embodies a correct and appropriate proposition of law, but it clearly appears from the undisputed facts of the case, that the verdict was amply sustained by the evidence, and if the instruction had been given it could not possibly have affected the verdict, the error will be held immaterial and the judgment will not be reversed on that account.

### STATEMENT OF CASE.

Charles F. Warriner, as surviving partner of the firm of Hungerford & Warriner, sued the appellants for alleged services as secretary and treasurer of the defendant company. The company pleaded never indebted. On the trial of said cause the verdict was for the plaintiff and judgment rendered for the sum $1,389.15. This judgmant appellants seek to reverse for the errors assigned and filed in this case.

The first four assignments of error may be considered together as they go to the admission of testimony offered by the plaintiff, who was the principal and only witness, with one exception, on his behalf. These objections were based mainly on the ground that there was no proper evidence to sustain the account offered by the plaintiff. This account as will appear by the examination was admitted to be taken from the books kept by the witness and covering a period of several years and covering an immense number of items, consisting of moneys paid out, commissions on sale of real estate, sale of tickets, accounts for the company

JANUARY TERM, 1895.         199

J.. M., P. Ry. & N. Co. v. Warriner, etc.—Statement of Case.

and various other matters beside the matter of salary. It was objected that the best evidence of this account were the books and not the statement of the witness, but the objection was overruled and the books were not produced. The witness nowhere stated in his testimony, nor was there any proof that the company was chargeable with them, except upon the question of salary, which the witness stated was due him. It was clearly secondary evidence and the defendant was at a great disadvantage. The objection should have been sustained.

See pages 49, 50, 51, 52, 53, 55, 61 to 65 of record.

The fifth assignment of error is to the admission in evidence of the testimony of Mary Roberts (page 66 and 67 of record) who testified that she heard Capt. Wallace, then dead, who at the time was president of the defendant company, tell the plaintiff, Warriner, on Bay Street, that his account was all right. We think that this was error for the reason, that Wallace was dead, it was immaterial, there was no means of rebutting it, and no admission of Wallace whose testimony was not admissible would have been sufficient to bind the company unless it had been shown that he had authority to pass upon those accounts, which as a matter of fact was clearly without his province.

The sixth assignment of error is to the admission in evidence of the account offered in evidence by the plaintiff to prove his case. Pages 67 to 68 of the record. It was objected to on the ground that it was not pertinent or the best evidence; the books of account from which that was copied should have been produced. The defendant was entitled to it as a matter of right; they were the best evidence.

The seventh assignment of error. The court erred in refusing to strike out the testimony, page 69 of the

record, was based on the objections already made, and the further objection, that it was not shown that Wallace, as president, had any authority to allow any such accounts. The testimony introduced by the defendant showed by its by-laws, that the board of directors of the company had the sole power of passing upon and auditing accounts, and that they met regularly once a month for that purpose.

The eighth assignment of error, the court erred in giving the charges asked by the plaintiff, is based upon the ground that the charges in our view of the case were improper. There was no proper testimony before the jury for them to pass upon and the charges were not, therefore, relevant. The second charge has also the further objection to it, it tended to prejudice the minds of the jury in its direction that there was an acquiescence or consent on the part of the board of directors of the company, when except in so far as the first part of the account, which had been rendered to the board of directors and claimed had become a stated account there was evidence to show that the board of directors had no knowledge official or otherwise of the second statement, copy of which is attached to the bill of exceptions.

The ninth assignment of error, the judge refused to give the charges asked by the defendant. The first charge asked and refused, was proper. Warriner claimed to sue as surviving partner of Hungerford & Warriner, who claimed to have been secretary and treasurer of the defendant company. The testimony showed that after Hungerford died another person had been appointed and acted as treasurer; the salary, therefore, at least for that part of the office could not be recovered, if it was divisible, and if not divisible, Warriner had no right to collect it. On the other hand

Warriner, as surviving partner in this suit, was not entitled to collect anything for his personal services, and the testimony clearly proved if anything was due for salary after Hungerford's death, it was due to him personally.   The charge should have been given.

The court erred in refusing to give the second charge. Capt. Wallace, as president of the road, had no authority to approve the accounts of the company.   The evidence uncontradicted introduced by the defendant clearly showed that fact.   The court should have left it to the jury to say whether or not such power existed, and if it did not exist he certainly could not bind the company by any act in that regard.

The refusal to give the third charge was also erroneous, because if the plaintiff did not produce the best evidence of which the case was susceptible of, he could not introduce secondary, and the books of original entry, which the testimony showed he had and kept, should have been offered in evidence as they were required by the defendant.

For these errors and especially for those in regard to charges, the admission of the testimony in regard to the alleged approval of the account by Wallace without authority from the company; the court erred in rendering judgment against the defendant on the verdict found by the jury, and this disposes of the tenth assignment.

The eleventh assignment, the court erred in refusing a new trial, is based upon the fact that from the mere weight of the testimony, except possibly for salary (as salary found to be due Hungerford & Warriner up to the time of Hungerford's death), was immaterial and irrelevant so far as the plaintiff was concerned and clearly showed upon the testimony of both parties that the plaintiff was not entitled to a verdict.   The ver-

dict was further erroneous for the reason, that the testimony showed Hungerford died November 6, 1888. The suit was brought as surviving partner, therefore the recovery could only be for what was due the partnership. After the death of Hungerford the partnership was dissolved, and any salary or services that Warriner performed after that time was due to him personally. It was also shown that after Hungerford's death another person acted as treasurer, yet the jury brought in a verdict for the whole account as claimed by the plaintiff, with interest, and included in that account was more than $800 due for salary, or claimed to be due for salary to Hungerford & Warriner, accruing after the death of Hungerford.

See additional accounts filed Nov. 4th, 1889, marked proof of claim.

Under date of June 1st is a charge of salary, Hungerford & Warriner, June 30 to Dec. 31, 1888, $500; one month of this or $83 at the rate of $1,000 a year should come out, as accrued after Hungerford's death. Below this we find, July 9, salary from Jan'y. 1, '89 to Oct. 1, '89, nine mos. at $1,000, $750. Clearly these items, if due at all, as they accrued after the death of the partner Hungerford, which death dissolved the partnership, could not be included in a suit brought by Warriner as surviving partner. For this, if for no other reason, the judgment should be reversed.

We respectfully submit that the court below should have granted a new trial, and that this court should so order.

Appeal from the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*H. H. Buckman*, for Appellant.

*A. W. Cockrell & Son*, for Appellee.

LIDDON, J. :

The appellee sued the appellant upon a declaration containing various common counts and obtained judgment. The plea was, never was indebted. The appellant assigns various errors. The first four assignments of error, which are argued together, all relate to rulings of the court admitting evidence by the plaintiff as a witness in his own behalf. The portion of the testimony first objected to is that in which the plaintiff's attorney handed him a statement of account, being a portion of the bill of particulars—or rather one of the bills of particulars—sued upon, and about which the plaintiff testified as follows: "These are the original accounts I rendered to the board of directors of the defendant at the regular meeting. I gave each director a copy of these accounts, and they carefully examined them, and no objection was made. The board of directors accepted this account and approved it, as appears by their minutes of that date." The objection made to this evidence was that it was "improper, in that the minutes of the company is the best evidence, and that it is not shown that the plaintiff performed any service for the company." We do not think the objection well taken. The account, in connection with the evidence offered, was certainly relevant to the count in the declaration upon an account stated. Langden vs. Roane, 6 Ala. 518, S. C. 41 Am. Dec. 60; 2 Rice on Evidence, p. 836. The latter portion of the testimony of the complainant, that the acceptance and approval of his account appeared "by their minutes of that date," is perhaps technically

erroneous. But that portion might be stricken out without materially affecting the other portion, which tended to show a rendering of his account by the plaintiff to the highest authority of the defendant corporation and its acquiescence therein. We can not in view of the facts in this case, as there was no evidence whatever to contradict the testimony of the plaintiff, hold that such an immaterial error should cause a' reversal of the judgment of the Circuit Court. Then it seems (the record not being very clear upon the subject) that the plaintiff offered in evidence the same minutes of the board of directors of the defendant, to the absence of which the defendant's counsel had just objected. The extract from the directors' minutes offered does not show in precise terms an approval of the account sued upon. It shows that the secretary and treasurer (said offices being filled by the firm of which the plaintiff was surviving partner) "presented their annual report showing the condition and affairs of said company, which was read and received, and on motion ordered filed." In connection with this extract was offered again the same account which had been rendered by the plaintiff to the defendant's directory, also verbal testimony to the effect that the plaintiff's firm handled and sold the lands, and kept the books and accounts of the defendant, and did the work and expended the money for the defendant, as indicated in said statement of account, and that said account was just and true. This evidence was objected to upon the ground "that the same was irrelevant and improper; that no books of original entry were introduced to prove said account, the account being made up of divers matters and that no proper services or proof of them have been shown, or proof of the value of them." We are unable to see any force in this ob-

jection. It is not necessary in proving an account stated, the gist of which consists in the agreement to or acquiescence in the correctness of the account by the other party to first show the books of original entry from which the account agreed upon by the parties was made up. The very object in rendering, stating and settling accounts is to avoid the necessity of making such proof.

The third assignment of error is based upon five pages of testimony of plaintiff in proving his account sued upon. The objections upon which it was based being similar to those upon which the second assignment is predicated, and what is said in disposing of that assignment will equally apply to this. The only new questions raised by this assignment are, in substance, (1) that the account sought to be proven contained several months' charges for alleged services which, if true, could not be recovered in this action. Allusion was here made to proof of services rendered by the plaintiff, after the death of his partner. (2) Next it was claimed that the plaintiff could not testify as to conversations had by him with one Alexander Wallace, president of the defendant company, and since deceased. These two matters claim our attention. As to the first matter, proof of services rendered by plaintiff as surviving partner after the death of his copartner. The agreement upon which the services were rendered, and about which, in part, the suit was brought was an unusual one. As it appeared upon the minute-book of the defendant, it was as follows: "Be it and the same is hereby further resolved that Charles F. Warriner and A. L. Hungerford, partners doing business as aforesaid (i. e., as Hungerford and Warriner) shall be paid the sum of one thousand dollars annually for the term of three years from this date for

·such services as shall be rendered by them severally as secretary and treasurer of said company, and jointly in keeping the books and accounts thereof, said salary to be paid monthly.'' This appears upon its face to be a contract which a partnership might lawfully enter into, and which being partially completed upon the death of one partner the other as surviving partner might fully perform. We know of no reason to the ·contrary, and counsel for appellant, although not abandoning his assignment of error, states no principle ·of law, and cites no authority whatever bearing upon the question. Without any light being thrown upon the subject by counsel in his brief, we have undertaken, at considerable expense of time and labor, to investigate the authorities bearing upon the subject. There are some exceptions to the rule useless to note, as this ·case does not seem to be embraced within any of them. The general rule has been, we think, correctly stated as follows: Where a partnership had entered into an executory contract, which was only partially performed at the death of the deceased, his death does not absolve either party from performance, in the absence of an express stipulation to that effect; and the existence of the partnership with its active functions to be exercised by the survivor is continued until the ·contract has been fully performed. Davis vs. Sowell & ·Co., 77 Ala. 262. To similar effect also are Tompkins vs. Tompkins, 18 S. C. 1; Ayres vs. Chicago, Rock Island & Pacific R. R. Co., 52 Iowa, 478, 3 N. W. Rep. 522; Oliver vs. Forrester, 96 Ill. 315; McGill vs. McGill, 2 Met. (Ky.) 258. In this case, however, the plaintiff did not rely entirely upon a legal implication as to his ·power as surviving partner to carry out and perform a contract made by the defendant with the firm. He ·testified also that all of the directors of the defendant

agreed to pay him the salary in question after the death of his partner. This agreement is referable to the original contract, and, in the absence of any contrary proof, must be presumed to have been made with the plaintiff as surviving partner. This testimony was not at all disputed. None of the directors were called to deny the plaintiff's evidence. Therefore as the case stands: not only did the plaintiff have the legal right to carry out and perform the contract made with the firm of which he was the surviving partner, but the defendant expressly agreed that he should do so, and receive the compensation agreed upon between it and the plaintiff's firm.

The objections made to any testimony from the plaintiff and Mrs. Roberts, a witness for plaintiff, as to conversations between him and Capt. Wallace, the president of the defendant corporation, are upon the ground that said Wallace was dead, and no authority was shown in Wallace to approve said account, as was attempted to be shown. The appellant makes no contention that this testimony was illegal under our statute of 1874 (Chapter 1983 Laws of Florida, McClellan's Digest, sec. 24, p. 518,) which prevents parties to a suit from testifying as to communications between such parties and a person deceased, in an action against his administrator, *etc.* The only contention is, that the evidence was objectionable because it stated admissions and promises of an agent as against his principal, without proof of the authority of the agent to make such admissions. Wallace was shown by the evidence to be the president and general manager of the defendant, and the record contains some of the by-laws of the defendant showing what power and authority were conferred upon him as such. There can be no dispute as to the general proposition, that a prin-

cipal is bound by the acts and declarations of his agent only when made within the scope of his authority, and about a matter which is depending. The great number of agents, with varying and different degrees of authority, employed by railroad and other large corporations, has caused considerable difficulty and diversity of opinion in the application of the rule to them. The difficult question, as to whether the record in this case shows the authority of Wallace to make the admissions as against the defendant which were testified to below, was submitted by the appellant without argument, which should not have been done. There was abundant evidence to show the liability of the defendant, without the admissions of Wallace. The evidence of the plaintiff was, that all of the items of his account, except for balance of salary after the death of his partner, had been submitted to the board of directors—the highest authority of the defendant corporation—that said board approved the account, and no objection was made to any item. As already stated, the board agreed to pay the balance of salary claimed. This evidence was not even sought to be contradicted. The proof of the admissions of Wallace was merely cumulative. The verdict and judgment could not have been different, whether such admissions had been received or rejected. If there was error in receiving such admissions, it was immaterial error, which could not by any possibility have affected the result.

Other assignments of error are insisted upon, but the questions presented by them have already been considered in determining those passed upon, with one exception. That exception is based upon the refusal of the court to give the jury an instruction requested by the defendant, as follows: "If the jury find from the evidence that Capt. Wallace was president of the

road, unless it has been shown to the satisfaction of the jury that he had full authority to approve the accounts of plaintiff, then his action in that regard could not bind the company.'' We are not prepared to say that this charge did not state a correct proposition of law, and might properly have been given to the jury.

In view, however, of the facts of this case, hereinbefore referred to, the verdict was amply sustained by the evidence, and if the instruction requested had been given it could not possibly have affected the verdict. We think it clear that the defendant suffered no injury whatever by reason of the instruction not being given. The judgment should not for such reason be reversed. Hayes vs. Todd, 34 Fla. 233, 15 South. Rep. 752; Wooten vs. State, 24 Fla. 335, 5 South. Rep. 39; Brown vs. State, 18 Fla. 472; Doggett vs. Willey, 6 Fla. 482, text 515; Prescott vs. Johnson, 8 Fla. 391; May's Executors vs. Seymour, 17 Fla. 725; Simmons vs. Spratt, 26 Fla. 449, 8 South. Rep. 123; Livingston vs. L'Engle, 27 Fla. 502, 8 South. Rep. 728. ''This court has uniformly proceeded upon the practice not to reverse a judgment, however erroneously an isolated point may have been ruled by the judge below, when it is clearly apparent that the party complaining had been in no degree injured by the improper ruling.'' McKay vs. Lane, 5 Fla. 268, text 276.

The judgment of the Circuit Court is affirmed.