WILLIAM PADGETT, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

Criminal Law—Homicide—Duty to Retreat—Burden of Proof—Instructions on Form of Verdict—Indictment—Sufficiency of —Rejection of Words *in as* Surplusage.

1. The well-settled rule is that where a party is himself at fault and provokes the difficulty, he can not justify killing his ad-versary in the affray that he himself has brought about, unless he in good 'faith withdraws from the combat in such manner to show his adversary his intention in good faith to desist.

2. An instruction is properly refused that puts the 'burden upon

the State in a criminal trial of *negativing* beyond a reasonable doubt matter that is *defensive*, and the burden of showing which *affirmatively* is upon the defendant, and that, too, whether the defendant affirmatively establishes such defensive matter by proof or not.

3. Under the provisions of Section 2383, Revised Statutes, requiring the degree of homicide found by the jury from the proofs to be expressed in the verdict, it is proper for the judge to instruct the jury to comply with its provisions as to the form of their verdict in such cases, in the event of *conviction*, but in such cases it is not necessary to offer the jury any special suggestions as to the form of the verdict in the event of *acquittal*.

4. Words in an indictment, that are not necessary or essential to describe or charge the offense, and that are not descriptive of any matter necessary to be proved, and that may be dispensed with without destroying or materially changing any essential allegation in such indictment, may be rejected as surplusage. Under the provision of Section 2380, Revised Statutes, an indictment for murder that charges an assault with a pistol upon A, with a premeditated design to effect his death, and then alleges the discharge of such pistol with a premeditated design to effect the death of B, and then charges the infliction of the mortal wound upon A, with the premeditated design to effect A's death, is sufficient to sustain a conviction.

Writ of Error to the Circuit Court of Holmes County.

The facts in the case are stated in the opinion of the Court.

*D. L. McKinnon, Daniel Campbell and Liddon and Eagan,* for Plaintiff in Error.

*The Attorney General,* for Defendant in Error.

TAYLOR, C. J. :

At the Fall term, 1897, of the Circuit Court of

Holmes County, William Padgett, the plaintiff in error, was tried upon an indictment charging him with murder, and was convicted of manslaughter and sentenced to fifteen years confinement in the penitentiary, and from such sentence comes here on writ of error.

The indictment, omitting its formal parts, is as follows: "That one William Padgett, late of the County of Holmes aforesaid, in the circuit and State aforesaid, on the 5th day of May, in the year of our Lord one thousand, eight hundred and ninety-seven, with force and arms, at and in the County of Holmes aforesaid, then and there being, did then and there, without authority of law, of his malice aforethought, and from a premeditated design to effect the death of one Daniel Henderson, did make an assault in and upon the said Daniel Henderson, and the said William Padgett a certain gun then and there charged with gunpowder and a certain leaden bullet which he, the said William Padgett, did then and there in his hands had and held at and against the said Daniel Henderson, then and there without authority of law, of his malice aforethought and from a premeditated design to effect the death of the said *David* Henderson, did shoot off and discharge, and that the said William Padgett with the leaden ball aforesaid by means of shooting off and discharging the said gun so loaded at and against the said Daniel Henderson did then and there without authority of law of his malice aforethought, and from a premeditated design to effect the death of the said Daniel Henderson, strike, penetrate and wound the said Daniel Henderson in and near the center of the stomach of the said Daniel Henderson, giving to the said Daniel Henderson, then and there with the leaden ball aforesaid, so as aforesaid discharged and shot out of the gun aforesaid by the said William Padgett, in and near the center of the stomach of the said Daniel Henderson, one mortal wound of the

depth of six inches, and of the breadth of half an inch, of which said mortal wound the said Daniel Henderson then and there instantly died. And the jurors aforesaid, on their oaths aforesaid, do say that the said William Padgett, him the said Daniel Henderson, in the manner and by the means aforesaid, without authority of law, of his malice aforethought, and from a premeditated design to effect the death of him, the said Daniel Henderson, then and there did kill and murder, against the form of the statute," etc.

Before pleading to this indictment the defendant moved to quash same upon the following grounds: "1st. The indictment charges no offense against the laws of Florida. 2nd. The indictment is vague, indefinite and uncertain. 3rd. The indictment does not allege that the assault was made with a premeditated design to effect the death of any person. 4th. The indictment does not charge that the assault was made to effect the death of the deceased, but of *David* Henderson." The judge overruled this motion to quash, and this ruling is the first assignment of error. The only contention in this court upon this motion relates to the use of the words "David Henderson" in that portion of the indictment charging the premeditated design entertained by defendant at the time of shooting the pistol alleged to have been discharged by him. The words "David Henderson" are preceded by the words "the said," and the only uncertainty in the allegations of this indictment is created by the use of these words. No person of the name of "David" had been previously mentioned to which "the said" could refer, nor is the name "David" used elsewhere in the indictment than in the allegation under consideration. The words "the said" not being essential to constitute the offense, and having no previous antecedent to which they could refer, and therefore not descriptive matter to be proved, should

Padgett v. State of Florida.—Opinion of Court.

be rejected as surplusage. Drake v. State, 145 Ind. 210, 44 N. E. Rep. 188, and authorities cited. With these unnecessary words eliminated the indictment charges definitely and minutely an assault upon Daniel Henderson with a premeditated design to effect his death, the discharge of the pistol with premeditated design to effect the death of David Henderson, and the infliction of the mortal wound upon Daniel Henderson with a premeditated design to effect the death of Daniel Henderson. Our statute provides that the unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed, or *any human being* is murder in the first degree. Section 2380 Revised Statutes. Under this statute the indictment in this case is good, because it is not necessary that the premeditated design be entertained against the person killed, but is sufficient if entertained against any human being, and the indictment does allege that every act of the defendant going to make up the charge of unlawful homicide was perpetrated by defendant from a premeditated design to effect the death of a definitely named human being.

The defendant's counsel requested the judge to give the following special charges: "1st. If you believe from the evidence that the defendant was attacked by the deceased, and such attack was in a manner to place a reasonable cautious man, apprehend danger to his life or great bodily harm to his person, and such danger was imminent from the then surrounding circumstances, he was not bound to retreat in order to avoid the necessity of killing the deceased, and you will acquit him." "2nd. If you believe from the evidence that at the time the defendant fired the fatal shot the deceased was advancing upon him, shooting at him with a pistol, and that the surrounding circumstances were

such as would cause a reasonable, cautious man to apprehend danger to his life, or great bodily harm to his person, then you will find the defendant not guilty." "3rd. The law presumes the prisoner to be innocent, and it devolves upon the State to prove beyond a reasonable doubt that at the time of the killing the defendant was not in danger either of losing his life or suffering great bodily harm at the hands of the deceased, and if you believe from the evidence that the defendant was in danger of losing his own life or of suffering great bodily harm from the deceased at the time he shot deceased, you will acquit him." "4th. A person unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant, when the attack is such as produces a reasonable expectation or fear of death or some other serious bodily injury." "5th. If you believe from the evidence that the deceased wrongfully took the oxen from the possession of the defendant's agent, and against the protest of the agent while they were in his actual possession, by force or with the felonious intent of appropriating them to his own use permanently, it was robbery, and the defendant had a right to pursue him and recover them, and use such force as was necessary to recover them, even to the taking of the life of the deceased." "6th. If you believe that the defendant went to the place where the deceased was killed simply for the purpose of recovering the oxen peaceably and made no effort or demonstration to do any violence to the deceased, and the deceased pursued him, firing at him, and the defendant believed that his life was in imminent danger from the deceased shooting at the time the fatal shot was fired, he was excused for killing the deceased, and you will acquit him." But the judge refused to give either or any of them, and such refusal is assigned as the second error. The court

below did not err in refusing these special instructions. The first and fourth of these instructions were properly refused, under the facts in proof, because of their omission to state the rule of law on the right of self-defense when the party is himself at fault and has been the aggressor or originator of the quarrel. The proofs in the case, even that of the defendant himself, tended to show that he was not free from fault in bringing about the difficulty that resulted in the homicide. The proofs show that he went to the house where the deceased was after night, armed with the Winchester rifle with which the killing was done, for the purpose of forcibly possessing himself of a pair of oxen that were in the possession of the deceased, and that while proceeding to carry out his purpose on the premises where the deceased was the latter came out of the house firing off a pistol as he came. Whether he was shooting at the defendant or in the air for the purpose of frightening him off simply, there is conflict. Under these circumstances it would have been improper to charge the jury in the broad unqualified language of these refused instructions that the defendant was not bound to retreat in order to avoid the necessity of killing the deceased. The law is well-settled that where a party is himself at fault and provokes the difficulty, he cannot justify killing his assailant in the affray that he himself has brought about, unless he in good faith withdraws from the combat in such manner as to show his adversary his intention in good faith to desist. 1 Bish. New Cr. Law, §§ 865 *et seq.*; Kerr's Law of Homicide, § 179.

The second of the refused instructions had been already fully given in substance by the court in its charges, and there was, therefore, no error in its refusal.

The third instruction requested and refused is not sound law wherein it puts the burden upon the State

of *negativing* beyond a reasonable doubt *defensive* matter, the burden of *affirmatively* showing which is upon the defendant, and that, too, whether the defendant affirmatively establishes such matter by proof or not.

The alleged error in the refusal of the fifth requested instruction is not argued here, and is, therefore, abandoned.

The sixth refused instruction was fully and more accurately covered in the charges given by the court, and there was, therefore, no error in its refusal.

The following paragraphs in the charges given by the judge to the jury were excepted to, and constitute the third assignment of error: "If, without excuse, or justification in law, or a premeditated design to effect the death, he should, from excessive fear or cowardice, have taken the life of Henderson when the circumstances were not such as to justify him in so acting in self-defense, he would be guilty of manslaughter." "But unless such belief of danger is reasonable, that is, unless a reasonably prudent and cautious man would entertain the same belief from the same appearances, it will be no defense even though it was an honest belief of danger." "Men do not hold their lives at the mercy of the unreasoning fears or excessive caution of others, and if from such motives the defendant killed Henderson without apparent good reason for so doing, he cannot justify his act as being in self-defense." "Should you find the defendant guilty, you will state in your verdict the degree of unlawful homicide of which you so find him, as that you find him guilty of murder in the first or second degree, or of manslaughter." We discover nothing erroneous in any of these propositions of law when taken in connection with the whole of the instructions of which they form a part. The last instruction quoted is objected to because of its omission to give the form of verdict in

the event the jury found the defendant not guilty. There is no merit in this contention. There was no necessity to offer the jury any suggestions as to the form of a verdict of acquittal, but it was proper to instruct them, to comply with our statute (§2383 Revised Statutes,) by expressing in their verdict the decree of homicide of which they found the defendant guilty in the event of a conviction.

The fourth and last assignment of error is predicated upon the refusal to grant a new trial. The only grounds of this motion not already disposed of in what has been said is the claim therein that the verdict is not supported by the evidence. We cannot agree with this contention; but, on the contrary, think that the evidence was ample to sustain the conviction had.

Finding no error, the judgment of the court below is affirmed.